**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

SUNNY FARMS LANDFILL LLC,

                     Plaintiff,

         - against -

RAIL SOLUTIONS, LLC,

                    Defendant.

-------------------------------------------------------------X

                                               **REPORT AND**
                                        **RECOMMENDATION**

                                        CV 15-5988 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.     PRELIMINARY STATEMENT**

       Plaintiff Sunny Farms Landfill LLC ("Plaintiff" or "Sunny Farms") commenced this action to recover monies owed to it by Defendant Rail Solutions, LLC ("Defendant" or "Rail Solutions") pursuant to a contract with Plaintiff for acceptance and disposal of waste tendered by Rail Solutions at Plaintiff's landfill facility. *See* Complaint ("Compl.") [DE 1].  The action was also brought to recover the sum owed by Defendant Theodore M. Vozzella ("Defendant T.M. Vozzella" or "T.M. Vozzella") pursuant to a contractual agreement to become liable for Rail Solutions' debt, plus attorney's fees and costs and other expenses.  *See id*.  Plaintiff and Defendant T.M. Vozzella entered into a Consent Judgment on December 23, 2016 and judgment against T.M. Vozzella was entered on December 28, 2016.  Stipulation and Consent Judgment ("Consent Judgment") [DE 25].  This action then proceeded solely against Rail Solutions.  Rail Solutions, however, has failed to defend this action.  Consequently, the Clerk of the Court issued a Certificate of Default against Rail Solutions, pursuant to Fed. R. Civ. P. 55(a).  DE 17.  Subsequently, Plaintiff filed a motion pursuant to Fed. R. Civ. P. 55(b) and Local Civil Rules 6, 7, and 55, seeking entry of a default judgment against Rail Solutions in the amount of $920,602.84, and such other and further relief as the Court deems just.  DE 28.

Judge Spatt referred Sunny Farms' Motion for Default Judgment to this Court for a report and recommendation as to whether the motion should be granted, and if so, the relief to be granted.  DE 29.  For the reasons that follow, the Court respectfully recommends to Judge Spatt that Sunny Farms' motion be GRANTED, in part, and that Sunny Farms be permitted to provide further information for the Court's consideration within 30 days.

## II.    BACKGROUND

### A.    Factual Background

The following facts are taken from the Complaint, filed on October 19, 2015, and are assumed to be true for purposes of this motion.  Sunny Farms is a limited liability company duly organized and existing under the laws of Ohio.  Compl. ¶ 3.  Its principal place of business is in Ohio, where it operates a waste disposal site.  *Id*.  Rail Solutions is a limited liability company duly organized and existing under the laws of the State of Georgia and with its principal place of business in Georgia.  *Id*. ¶ 4.  Rail Solutions facilitates the removal and transfer of waste.  *Id*. ¶ 13.  Defendant T.M. Vozzella was the original majority shareholder of Rail Solutions but was bought out by his son, Theodore Vozzella III ("Vozzella III").  *Id*. ¶¶ 4-5.

On or about November 27, 2012, Sunny Farms entered into a "Waste Disposal Agreement" with Rail Solutions ("November 2012 Agreement").  *Id*. ¶ 12.  The agreement included a personal guarantee by then principal Vozzella III.  *Id*.  On or about March 4, 2013, Rail Solutions entered into a related agreement with Island Rail Terminal, Inc., the operator of a waste transfer station in Brentwood, New York ("March 2013 Agreement").  *Id*. ¶¶ 11, 13. Under the agreements, collectively, Rail Solutions would transport waste from Island Rail's transfer station in Brentwood, New York to Sunny Farm's disposal site in Fostoria, Ohio.  *Id*. Sunny Farms maintains that it has fully complied with its obligations under the November 2012

Agreement by accepting, treating and retaining the waste transported to it by Rail Solutions but that Rail Solutions has failed to tender full payment to Sunny Farms in accordance with the agreement. *Id.* ¶ 17. According to Sunny Farms, the total amount owed by Rail Solutions under the November 2012 Agreement is $920,602.84, plus attorneys' fees, costs, expenses and interest at the highest rate permitted under the law. *Id.* ¶ 18.

Sunny Farms and Rail Solutions had at least two meetings regarding Rail Solutions' failure to pay. *Id.* ¶ 19. These meetings took place at Island Rail's office in New York, and were attended, in relevant part, by Vozzella III and Chris Valerian, Sunny Farm's President. *Id.* Vozzella III participated in the meetings "on behalf of Rail Solutions and himself individually, as a guarantor of Rail Solutions' obligations to Sunny Farms." *Id.* Also in attendance were Vincent Maggio, Sr., the owner, manager, principal officer, and/or director of Island Rail, Vincent Maggio, Jr., and Dominic Testa, Maggio's son-in law and an officer of Island Rail. *Id.*

Thereafter, Rail Solutions filed suit against Island Rail in New York State Supreme Court, Suffolk County to recover monies owed on the March 2013 Agreement (Index No. 13-24749). *Id.* ¶ 20. According to Sunny Farms, after Island Rail answered and served a notice of deposition, Rail Solutions voluntarily withdrew the action. *Id.*

Vozzella III, the former principal of Rail Solutions, passed away in October 2013. *Id.* ¶ 21. Upon the passing of his son, T.M. Vozzella began acting on behalf of Rail Solutions. *Id.* ¶ 23. In doing so, he "attempted to address claims made against [Rail Solutions] by Sunny Farms and sought to collect amounts owed to Rail Solutions by Island Rail." *Id.* To that end, T.M. Vozzella, personally and on behalf of Rail Solutions, after representing that he had the ability to bind the company, entered into an Assignment, "whereby Rail Solutions assigned to Sunny Farms all of its claims related to its performance of waste transport services for Island

3

Rail." *Id*. ¶¶ 24, 25.  In exchange for the warranties and representations made by Rail Solutions

and T.M. Vozzella pursuant to the Assignment, "Sunny Farms agreed to conditionally release

and discharge Rail Solutions from its obligations to Sunny Farms in an amount equal to that

which Sunny Farms collected from Island Rail or Maggio, whom Rail Solutions and T.M.

Vozzella alleged was Island Rail's guarantor." *Id*. ¶ 27.  Rail Solutions and T.M. Vozzella

agreed that they "shall remain obligated and liable in the event that [Island Rail] or Maggio fail

to pay the amount due and ow[]ing on the [Island Rail] account in full and any of the

representations and warranties set forth herein are not truthful and accurate in all material

respects." *Id*. (internal quotation marks omitted).

On July 10, 2014, Sunny Farms commenced an action entitled *Sunny Farms Landfill,*

*LLC v. Island Rail Terminal, Inc. and Vincent Maggio, Sr*., CV 14-4250, in the Eastern District

of New York against Island Rail and Vincent Maggio as guarantor to recover on Rail Solutions'

claims against them.  *Id*. ¶ 30.  Island Rail and Maggio filed a motion to dismiss the suit on the

grounds that Maggio had never guaranteed the agreement between Island Rail and Rail

Solutions.  *Id*. ¶ 31.  Sunny Farms opposed the motion, relying on prior representations by

Vozzella III and T.M. Vozzella that (1) Maggio was the personal guarantor of the agreement

between Rail Solutions and Island Rail, and (2) the November 2012 Agreement and the March

2013 Agreement "had the same format that provided for personal guarantees."  *Id*.  Judge Bianco

denied the motion to dismiss on August 7, 2015.  *Id*.

While the motion to dismiss was pending, counsel for Sunny Farms received

correspondence from counsel for T.M. Vozzella indicating that he "has no direct knowledge of

the Sunny Farms contract or the Island Rail contract."  *Id*. ¶ 32 (internal quotation marks

omitted).  In connection with Sunny Farm's suit against Rail Solutions, Sunny Farm's counsel

4

requested that T.M. Vozzella answer a series of foundational questions that it anticipated Rail

Solutions would ask him. *Id.* ¶ 35. T.M. Vozzella's responses directly contradicted oral

representations made by him as well as the provisions of the Assignment. *See id.* 36-37. In

response to one of the questions, namely, "Are you now or have you ever been authorized to sign

and enter into binding agreements on behalf of Rail Solutions?" T.M. Vozzella replied, "No."

*Id.* ¶ 38. The Assignment, however, provided that "[T. M. Vozzella] has the power and authority

to execute this Assignment on behalf of [Rail Solutions] and to bind [Rail Solutions], and this

Assignment represents the binding obligation of [Rail Solutions] and [T. M. Vozzella]." *Id.*

(internal quotation marks omitted).

Sunny Farms asserts that Rail Solutions and T.M. Vozzella have materially breached the

Assignment by representing that certain warranties and representations of the Assignment are

false. *See id.* ¶ 39. In this regard, the Assignment was expressly conditioned on the "truth,

accuracy and veracity of T. M. Vozzella's and Rail Solutions' representations set forth in the

Assignment, and they acknowledged and agreed that Sunny Farms would not enter into the

Assignment if not for the representations and warranties, and that it was relying on their truth,

accuracy and veracity." *Id.* Further, the Agreement provided that Rail Solutions and T.M.

Vozzella "shall remain obligated and liable in the event that [Island Rail] or Maggio fail to pay

the amount due and owing on the [Island Rail] account in full and any of the representations

and warranties set forth herein are not truthful and accurate in all material respects." *Id.* ¶ 43

(internal quotation marks omitted).

Plaintiff maintains that even if the representations of Rail Solutions and T.M. Vozzella

were false at the time they executed the Assignment, this, too, would constitute a breach of the

Assignment since the Assignment provided that "[Sunny Farms] would not enter into this

5

Agreement if not for the representations and warranties herein provided by [T.M. Vozzella]; and that [Sunny Farms] is relying on the truth, accuracy, and veracity of such representations and warranties." *Id.* ¶ 44.  According to Sunny Farms, Rail Solutions and T.M. Vozzella's breach of the Assignment renders the assignment of Rail Solutions claim to Sunny Farms "worthless" and Sunny Farms' pursuit of those claims in the federal action against Rail Solutions futile.  *Id.* ¶ 45.

Based on these enumerated facts, the Complaint asserts a cause of action against Rail Solutions, Inc. for "Breach of Contract or Breach of Implied Covenant of Good Faith and Fair Dealing Regarding the 2012 Agreement," and against T.M. Vozzella for "Breach of Contract or Breach of Implied Covenant of Good Faith and Fair Dealing."  *See generally*, Compl.  Sunny Farms also brings claims against Rail Solutions for an Account Stated, Unjust Enrichment, and Quasi-Contract/Quantum Meruit, and against both defendants for fraud and promissory estoppel. *Id.*

**B.    Relevant Procedural History**

Sunny Farms commenced the instant action against Rail Solutions and T.M. Vozzella on October 19, 2015 and thereafter served both defendants with copies of the Summons and Complaint.  *See generally* Compl.; DE 6-7.  On January 4, 2015, Attorney Leandre M. John filed a Notice of Appearance on behalf of the two defendants, but subsequently filed an Answer on behalf of only T.M. Vozzella.  DE 8, DE 10.  During the March 15, 2016 Initial Conference, Attorney John confirmed with the Court that although she filed a Notice of Appearance on behalf of both defendants, she was in fact only representing T.M. Vozzella.  *See* DE 13.

In light of Rail Solutions' failure to timely answer or otherwise defend this action, Sunny Farms requested a certificate of default from the Clerk's Office.  DE 15.  The Clerk of the Court entered the certificate on September 15, 2016.  DE 17.  The case proceeded as to T.M. Vozzella,

who entered into a Stipulation and Consent Judgment with Rail Solutions on December 23, 2016. *See* Consent Judgment [DE 25]. Judgment was entered against T.M. Vozzella "in the amount of $920,602.84, representing the face amount of the complaint, plus an agreed-upon sum of $85,000, representing Sunny Farm's cost in pursuing actions herein and in other cases based on Vozzella's representations, for a total of $1,005,602.84." *Id.* All claims, counterclaims or set-offs by and between Sunny Farms and T.M. Vozzella were subsequently dismissed with prejudice. DE 26.

On January 13, 2017, Sunny Farms filed a Motion for Default Judgment against Rail Solutions. *See* Plaintiff's Notice of Motion for Default Judgment [DE 28]. Judge Spatt referred the motion to the undersigned for a report and recommendation as to whether the motion should be granted, and, if so, the relief to be granted. DE 29. This Court issued an Order directing Sunny Farms to provide certain additional documentation and information in support of its pending claim for damages. DE 31. On July 20, 2017, Sunny Farms filed a supplemental submission which included a Declaration by James T. Lyon as well as two Exhibits. *See* Declaration of James T. Lyon In Support of Plaintiff's Motion for Default Judgement ("Lyon Decl.") [DE 34]. Lyon is currently the Regional Vice President of Tunnel Hill Partners/Sunny Farms Landfill, LLC. *Id.*, ¶ 2. From February 2009 to January 1, 2014, Lyon was the Regional Controller of Sunny Farms Landfill, LLC, and from January 2014 to December 2015, he served as Regional Vice President of WCA Waste Corporation. *Id.* Lyon states that "as such, [he] was personally involved in the financial aspect of Sunny Farms' business and was aware of the claims at issue herein as they were arising." *Id.*

III.    **LEGAL STANDARD**

Fed. R. Civ. P. 55 establishes a two-step process for obtaining a judgment against a defaulting party.  *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 504–05 (2d Cir. 2011); *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  First, a plaintiff must obtain a notation of default indicating that a party has "failed to plead or otherwise defend."  Fed. R. Civ. 55(a).  Second, upon obtaining a notation of default, "a plaintiff must next seek a judgment by default under Rule 55(b)." *New York*, 420 F.3d at 104.  The decision to grant a motion for default judgment is left to the sound discretion of the district court.  *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 233 (2d Cir. 2012) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 88 (2d Cir. 2009)) ("Rule 55(b) commits this decision to the sound discretion of the district court."); *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)) ("The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.") (internal quotation marks omitted).

"Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability."  *Philip Morris USA Inc. v. 5 Bros. Grocery Corp.*, No. 13-2451, 2014 WL 3887515, at *2 (E.D.N.Y. Aug. 5, 2014) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y.1992)); *Krevat v. Burgers to Go, Inc.*, No. 13-6258, 2014 WL 4638844, at *5 (E.D.N.Y. Sept. 16, 2014) (citing *Joe Hand*

*Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007)) ("A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true.").  A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability.  *See Deckers Outdoor Corp. v. TKM Forest Hills, LLC*, No. 12-5986, 2014 WL 4536715, at *4 (E.D.N.Y. Sept. 11, 2014) (citing *Greyhound ExhibitGroup. Inc.*, 973 F.2d at 158).

However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right."  *Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC*, No. 13-4358, 2014 WL 2169769, at *3 (E.D.N.Y. May 23, 2014) (quoting *Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc.*, No. 08-3168, 2009 WL 4929419, at *6 (E.D.N.Y. Oct. 6, 2009)) (internal quotation marks omitted), *report and recommendation adopted by* 2014 WL 2765793 (E.D.N.Y. Jun. 18, 2014)); *Bravado Int'l Grp. Merchandising Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y.1993)).  Rather, "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."  *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases); *see Said v. SBS Elecs., Inc.*, No. 08-3067, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010) (The fact that a complaint remains unanswered will not suffice to establish liability on the plaintiff's claims since "a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading*."), adopted as modified on unrelated grounds*, 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010 ).

9

"As the Second Circuit has noted, when determining whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of a default." *Krevat*, 2014 WL 4638844, at *5 (citing *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001); *Enron Oil Corp.*, 10 F.3d at 96). "These factors are: (1) 'whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Id.* (quoting *Tr. of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds v. Flooring Experts, Inc.*, No. 12-6317, 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted by* 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013)); *see, e.g.*, *Reliance Commc'ns LLC v. Retail Store Ventures, Inc.*, No. 12-02067, 2013 WL 4039378, at *2 (E.D.N.Y. Aug. 7, 2013) (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)) (citing *O'Callahan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007); *U.S. v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006)).

## IV.   DISCUSSION

### A.   Personal Jurisdiction

Since this is a diversity action, personal jurisdiction is determined by the law of the forum state. *Foshan Shunde Xinrunlian Textile Co. v. Asia*, No. 14-4697, 2017 WL 696025, at *3 (E.D.N.Y. Jan. 30, 2017) (quoting *Bonkowski v. HP Hood LLC*, 2016 WL 4536868, at *1 (E.D.N.Y. Aug. 30, 2016)). "While the Second Circuit has not mandated that courts undertake a personal jurisdiction analysis as other circuits have, it has invited courts to assess personal jurisdiction in cases of default like this one." *Yao Wu v. BDK DSD*, No. 14-5402, 2015 WL 5664256, at *2 (E.D.N.Y. Aug. 31, 2015) (citing *Sinoying Logistics Pte Ltd. v. Yi Da Xin*

10

*Trading Corp.*, 619 F.3d 207, 213 n.7 (2d Cir. 2010)), *report and recommendation adopted by*, No. 14-5402, 2015 WL 5664534 (E.D.N.Y. Sept. 22, 2015); *Foshan Shunde Xinrunlian Textile Co.,* 2017 WL 696025, at \*2 (quoting *City of New York v. Mickalis Pawn Shop*, LLC, 645 F.3d 113, 133 (2d Cir. 2011)) ("Before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant[s].") (alteration in original).

The Second Circuit has held that in order for a court to exercise personal jurisdiction over a defendant, the following requirements must be met: (1) "the plaintiff's service of process upon the defendant must have been procedurally proper," *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999); *In re Kalikow*, 602 F.3d 82, 92 (2d Cir. 2010)), *certified question accepted sub nom. Licci v. Lebanese Canadian Bank*, 18 N.Y.3d 952, 967 N.E.2d 697 (N.Y. 2012), *and certified question answered sub nom. Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 984 N.E.2d 893 (N.Y. 2012); (2) "there must be a statutory basis for personal jurisdiction that renders such service of process effective," *id.*; and (3) "the exercise of personal jurisdiction must comport with constitutional due process principles." *Id.* "The burden of proving that the elements of personal jurisdiction are present falls on the plaintiff." *de Ganay v. de Ganay*, No. 11-6490, 2012 WL 6097693, at \*4 (S.D.N.Y. Dec. 6, 2012) (citing *Williams v. Bernard*, No. 05–CV–3202, 2007 WL 2455175, at \*6 (E.D.N.Y. Aug. 23, 2007); *Acceptance Ins. Co. v. Home Medical of America, Inc*., No. 4-9338, 2005 WL 3471780, at \*4 (S.D.N.Y. Dec. 20, 2005)).

In connection with the first requirement, service of process, Sunny Farms has submitted Affidavits of Service demonstrating that Rail Solutions was duly served with the Summons and Complaint in accordance with the Federal Rules of Civil Procedure. *See* DE 6. With regard to

the second requirement, Rule 4(k) of the Federal Rules of Civil Procedure sets forth the statutory

bases for personal jurisdiction.  *Licci ex. Rel. Licci*, 673 F.3d at 59.  In relevant part, Rule 4(k)

provides as follows:

> (1) In General. Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:
>
>> (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;
>>
>> (B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or
>>
>> (C) when authorized by a federal statute.

Fed. R. Civ. P. 4(k).  Sunny Farms alleges in its Complaint that Rail Solutions engaged in business

within the Eastern District of New York sufficient to subject the Defendant to jurisdiction under

New York CPLR Section 302(a)(1).  Compl. ¶ 7.  Section 302(a)(1) provides, in relevant part, as

follows:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1.  transacts any business within the state or contracts anywhere to supply goods or services in the state

Personal jurisdiction is conferred over a defendant pursuant to Section 302(a) if the following

requirements are met:

> First, the defendant must have transacted business in New York. Known as the "purposeful availment" prong of § 302(a)(1), this requirement calls for a showing that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within New York ... thereby invoking the benefits and protections of its laws." The second requirement, known as the 'nexus' prong of § 302(a)(1), holds that there must be an 'articulable nexus' or 'substantial

relationship' between the plaintiff's claim and the defendant's transaction in New York.

*Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 278 (E.D.N.Y. 2016) (alterations in original) (quoting N.Y. C.P.L.R. § 302(a)(1)) (internal citation omitted) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)).  Section 302 "is a 'single act statute' and proof of one transaction in New York [may be] sufficient to invoke jurisdiction."  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 463, 522 N.E.2d 40, 43 (1988)) (internal quotation marks omitted) (citing *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005)).

In determining whether the "purposeful availment" prong has been satisfied, courts should consider several factors, including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)).  No single factor is dispositive and the determination ultimately turns on the totality of the circumstances.  *Id.*  Here, Sunny Farms alleges that Rail Solutions facilitated the "removal and transportation of waste from [Island Rail's] Brentwood based Transfer Station through Long Island and Queens, out of New York and on to its ultimate disposition at the Disposal Site in Ohio."  Compl. ¶ 14.  Moreover, Sunny Farms and Rail Solutions had at least two meetings regarding Rail Solutions'

13

failure to pay in accordance with the November 2012 Agreement. Compl. ¶ 19. These meetings took place at Island Rail's office in New York, and were attended, in relevant part, by Vozzella III and Chris Valerian, Sunny Farm's President. *Id.* The November 2012 Agreement contained a choice of law clause which provided that "The Agreement shall be governed by and construed in accordance with the laws of the State" of Ohio. Because this fact is not dispositive, the Court has determined that in light of the totality of the circumstances, the "purposeful availment" prong of Section 302(a)(1) has been satisfied.

Moreover, the "nexus prong" is also satisfied by virtue of the fact that Rail Solutions' transportation of waste from New York to Sunny Farms' landfill was the subject of the November 2012 Agreement, the breach of which gave rise to the instant action. *See generally* Compl.; *see Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 19 (E.D.N.Y. 2016) (quoting *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d at 339, 960 N.Y.S.2d 695, 984 N.E.2d 893 ("[T]he nexus prong of § 302(a)(1) does not demand a causal connection between the defendant's New York transaction and the plaintiff's claim, but instead requires only a 'relatedness ... such that the latter is not completely unmoored from the former.'").

"Having concluded that there is a statutory basis to exercise personal jurisdiction over Defendant, the Court must consider whether [pursuant to the third *Licci* factor] exercising such jurisdiction would comport with the due process protections provided by the United States Constitution." *Weiss*, 176 F. Supp. 3d at 284. According to the Second Circuit, it would be "rare" and "unusual" to conclude that due process was not satisfied in the face of a finding that a court may exercise personal jurisdiction over a defendant pursuant to Section 302(a)(1). *Id.* at 284-85 (citing *Licci ex rel. Licci*, 732 F.3d at 170). In connection with its due process analysis, the Court must consider whether the defendant "purposefully established minimum contacts

14

within the forum State," and whether the assertion of personal jurisdiction would be reasonable, or in other words, whether it would "comport with 'fair play and substantial justice.'" *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 320, 66 S. Ct. 154, 160 (1945)). "Where, as here, a court's specific jurisdiction[1] is invoked, 'minimum contacts' sufficient to satisfy due process exist if 'the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.'" *Weiss*, 176 F. Supp. 3d at 285 (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013)).

With respect to the reasonableness inquiry, the Court must consider the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Chloé*, 616 F.3d at 164-65 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–14, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 83 (2d Cir. 1993)).

The Court finds that its exercise of personal jurisdiction in this case comports with constitutional due process principles. Rail Solutions has purposefully established minimum

---

[1]     The Court notes that there are two types of personal jurisdiction: specific jurisdiction and general jurisdiction. *Brown v. Lockheed Martin Corp*., 814 F.3d 619, 624 (2d Cir. 2016). "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state." *Id*.  General jurisdiction allows a court to adjudicate any claim asserted against a defendant regardless of where that claim arose. *Id*. at 624-25 (citing *Chloé*, 616 F.3d at 164; Lea Brilmayer, et al., A General Look at General Jurisdiction, 66 Tex. L.Rev. 721 (1988)). Here, specific jurisdiction is implicated since the instant suit arises from or is related to Rail Solutions' activities or contacts in New York.

contacts with New York by offering its waste transportation services to New York companies like Island Rail. *See Chloé*, 616 F.3d at 171 (citing *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 (internal quotation marks omitted)). Moreover, the instant action arises from a breach of contract pursuant to which Rail Solutions agreed to transfer waste from Brentwood, New York to Sunny Farm's landfill in Ohio

With regard to the reasonableness inquiry, this Court has an interest in adjudicating this case and resolution in this Court would be most efficient in light of the fact that Rail Solutions' former co-defendant, T.M. Vozzella, who represented to Sunny Farms that he had the power to legally bind Rail Solutions, has already entered into a Consent Judgment which Judge Spatt so-ordered. *See* DE 25. In light of the fact that T.M. Vozzella defended this action, the Court does not believe that any significant burden will inure to Rail Solutions. Moreover, the Court does not find that some other forum "has a particular advantage over another in terms of convenience for the adjudication of this case." *See Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 543-44 (S.D.N.Y. 2015). Lastly, this case does not implicate the "substantive social policies" contemplated by the fifth factor identified by the Second Circuit in *Chloé*. In light of the above, the Court finds that it may lawfully exercise personal jurisdiction over Rail Solutions in this case.

### B.    Default Judgment

#### 1.    Willfulness

When a defendant is continually and "entirely unresponsive," the defendant's failure to respond is considered willful. *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders Dist. Council*, 2003 WL 1960584, at *2). Under the present facts, Rail Solutions' failure to respond to the Complaint

sufficiently demonstrates willfulness.  *See Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007).  Sunny Farms has submitted Affidavits of Service demonstrating that Rail Solutions was duly served with the Summons and Complaint.  DE 6.  Rail Solutions neither answered nor responded in any way to the Complaint, nor did they request an extension of time to respond, and the time to do so has expired.  In addition, Sunny Farms provided the Court with an Affidavit of Service indicating that Rail Solutions was served with the Motion for Default Judgment by priority mail on January 13, 2017.  DE 30.  Moreover, on January 4, 2016, Attorney John filed a Notice of Appearance in this case on behalf of T.M. Vozzella and Rail Solutions.  *See* DE 8.  It was not until January 15, 2016 that Attorney John informed Sunny Farms' counsel that she was no longer representing Rail Solutions in this action.  *See* January 15, 2016 Email, annexed as Exhibit F to Motion for Default Judgment [DE 28-10].  Thus, there was a period of time, albeit a brief one, during which Rail Solutions was represented by counsel.  There is no indication that Rail Solutions' failure to respond to the Complaint – despite being properly served and despite initially being represented by counsel – was anything but deliberate.  Rail Solutions' failure to answer the Complaint and to respond to the instant motion demonstrates willfulness in accordance with Second Circuit case law.  *See S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998); *see also Indymac Bank*, 2007 WL 4468652, at *1; *U.S. v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006).  Consequently, Sunny Farms has established the first factor for entry of default judgment by demonstrating willfulness.

### 2.    *Meritorious Defense*

Turning to the next factor, the Court is unable to make a determination whether Rail Solutions has a meritorious defense since no such defense has been presented to the Court.  *See*

17

*Bridge Oil Ltd.*, 2008 WL 5560868, at *2 (citing *Mason Tenders Dist. Council*, 2003 WL 1960584, at *2); *Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-46, 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012), report and recommendation adopted, 2012 WL 832452 (E.D.N.Y. March 12, 2012). Although Rail Solutions' default constitutes an admission of all the factual allegations contained in the Complaint as they relate to liability, Sunny Farms must nevertheless demonstrate that the uncontested allegations set forth valid claims. *See Said v. SBS Electronics, Inc.*, No. 08-3067, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010) (collecting cases).

### a.    Choice of Law Analysis

Since this is a diversity action, the Court must first apply the choice of law principles of the forum state, which in this case is New York, in order to properly determine which state's substantive law should apply to Sunny Farms' claims. *Star Ins. Co. v. Champion Const. Servs. Corp.*, No. 13-3635, 2014 WL4065093, at *2 (E.D.N.Y. Jul. 30, 2014) (citing *Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 871 (2d Cir. 1994)), *report and recommendation adopted*, No. 13-3635, 2014 WL 4065094 (E.D.N.Y. Aug. 15, 2014). At the outset, the Court acknowledges that Sunny Farms does not discuss the issue of choice of law and instead exclusively cites opinions applying New York law. *See generally* Memorandum of Law in Support of Plaintiff's Motion for a Default Judgment ("Pl's. Mem.") [DE 28-3]. Despite this omission, however, the Court is still under an obligation to conduct a choice of law analysis. *See Chia Huey Chou v. Remington Tai Che*, No. 09-4121, 2010 WL 6546831, at *2 (E.D.N.Y. Aug. 24, 2010), report and recommendation adopted sub nom. *Chia Huey Chou v. Che*, No. 09-4121, 2011 WL 1527938 (E.D.N.Y. Apr. 22, 2011); *but see Glob. Switching Inc. v. Kasper*, No. 06-412, 2006 WL 1800001, at *11 n.10 (E.D.N.Y. June 28, 2006) (quoting *Motorola Credit Corp.*

18

*v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004)) (In a case involving a motion for preliminary injunction, the court noted that the parties' citation to cases applying New York law constituted "implied consent…sufficient to establish choice of law.").

With respect to contract claims, New York applies a "grouping of contacts" or "center of gravity" approach to the choice of law analysis. *See Star Ins. Co.*, 2014 WL 4065093, at *2 (internal quotation marks omitted) (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 618 N.Y.S.2d 609, 642 N.E.2d 1065 (1994)), report and recommendation adopted by 2014 WL 4065094 (Aug. 15, 2014 E.D.N.Y.). When interpreting a contract claim, courts should consider "(1) any choice-of-law provision contained in the contract; (2) the place where the contract was negotiated, issued, and signed; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 162–63 (2d Cir. 1998) (citing *Sundance Cruises v. American Bureau of Shipping*, 7 F.3d 1077, 1082 (2d Cir. 1993); *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 417 (2d Cir. 1990); *Siegelman v. Cunard White Star Ltd.*, 221 F.2d 189, 193–95 (2d Cir. 1955); *Aqua–Marine Constrs., Inc. v. Banks*, 110 F.3d 663, 674 (9th Cir.); *Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763, 767 (D.C. Cir. 1992)); *see In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 597 N.Y.S.2d 904, 613 N.E.2d 936, 939 (1993) (establishing similar factors for consideration when determining which state's substantive law to apply in contract claims).

In connection with the first factor listed above, the contract giving rise to this case contains the following choice of law clause:

> **Miscellaneous**. The agreement shall be binding upon and shall inure
> to the benefit of the parties hereto and their respective successors

and permitted assigns. *The Agreement shall be governed by and construed in accordance with the laws of the State in which the Facility is located.* A faxed signature of any party shall have the same legal binding effects as an original signature.

Disposal / Service Agreement ("November 2012 Agreement"), annexed to Exhibit A to Motion for Default Judgment [DE 28-5] (emphasis added). Pursuant to the contract, "Facility" refers to Sunny Farms' disposal facility located in Fostoria, Ohio. *See* November 2012 Agreement. Under New York law, "[a]bsent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Phillips 66 Co. v. TNT Petroleum, Inc.*, No. 15-5938, 2017 WL 765884, at *3 (E.D.N.Y. Feb. 2, 2017) (alteration in original) (quoting *Champion Auto Sales, LLC v. Polaris Sales Inc.*, 943 F. Supp. 2d 346, 351-52 (E.D.N.Y. 2013)) (internal quotation marks omitted), *report and recommendation adopted*, No. CV 15-5938, 2017 WL 758498 (E.D.N.Y. Feb. 27, 2017), *order corrected and superseded on unrelated grounds*, No. CV 15-5938, 2017 WL 902533 (E.D.N.Y. Mar. 2, 2017), and *report and recommendation adopted,* No. CV 15-5938, 2017 WL 902533 (E.D.N.Y. Mar. 2, 2017).

In considering the remaining elements set forth above, the Court is unable to discern the place where the contract was negotiated, issued, and signed. Therefore, these factors weigh neither in favor of nor against enforcement of the choice of law clause. The place of performance and location of subject matter, however, favor enforcement of the choice of law clause. Under the agreement, Rail Solutions contracted to transfer waste originating in Brentwood, New York to Sunny Farms' disposal facility in Ohio, the location of its principal place of business. *See* November 2012 Agreement; *see also* Compl. ¶ 3. Moreover, while Rail Solutions is a Georgia company, Sunny Farms is organized and exists under the laws of Ohio. Compl. ¶ 3. In light of these facts and the lack of ambiguity in the language of the clause — and

20

the lack of any evidence that it was the product of fraud or constitutes a violation of public policy — the Court has determined that the parties have sufficient contacts with Ohio to enforce the choice of law clause. *See Phillips 66 Company*, 2017 WL 765884, *4; *see also Follman v. World Fin. Network Nat'l Bank*, 721 F. Supp. 2d 158, 161 (E.D.N.Y. 2010) (enforcing Ohio choice of law provision where the defendant's principal place of business was in Ohio and the subject contract provided that Ohio law would govern the agreement). The Court will therefore apply Ohio law in determining whether Plaintiff has adequately pleaded the claims set forth in its Complaint. In any event, as will be demonstrated below, New York and Ohio law do not conflict in this regard. Therefore, the Court finds that application of either would yield the same outcome.

> **b.    Breach of Contract or Breach of Implied Covenant of Good Faith and Fair Dealing Regarding November 2012 Agreement**

"Generally, a breach of contract action is pleaded by stating (1) the terms of the contract, (2) the performance by the plaintiff of his obligations, (3) the breach by the defendant, (4) damages, and (5) consideration." *Am. Sales, Inc. v. Boffo*, 71 Ohio App. 3d 168, 175, 593 N.E.2d 316, 321 (2nd Dist. 1991) (citing *Harper v. Miller*, 109 Ohio App. 269, 11 O.O.2d 17, 164 N.E.2d 754 (3rd Dist. 1957); *Haefner v. First Natl. Bank*, 70 Ohio App. 293, 25 O.O. 54, 44 N.E.2d 489 (1st Dist. 1942); *Silberman v. Natl. City Bank*, 36 Ohio App. 442, 173 N.E. 16 (8th Dist. 1930)); *Ihenacho v. Ohio Inst. of Photography & Tech*., 2nd Dist. Montgomery No. 24191, 2011 WL 3245119, at ¶ 48 (quoting *Flaim v. Med. College of Ohio*, Franklin App. No. 04AP–1131, 2005 WL 736626, at ¶ 12)); *see Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y*., 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)) (In order to state a claim for breach of contract under New York law, a

"complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.") (internal quotation marks omitted); accord *Kausal v. Educ. Prods. Info. Exchange Institute*, 105 A.D.3d 909, 910, 964 N.Y.S.2d 550 (2d Dep't 2013).  Here, Sunny Farms has pleaded and provided the Court with evidence of the existence of a duly executed contract between Sunny Farms and Rail Solutions.  *See* Compl. ¶ 12-15; *see also* November 2012 Agreement, annexed to Exhibit A of the Declaration of Christopher Valerian in Support of Plaintiff's Motion for Default Judgment ("Valerian Decl.") [DE 28-2].  In this regard, Sunny Farms alleges that on or about November 27, 2012, it entered into an agreement with Rail Solutions pursuant to which it would accept for disposal waste that Rail Solutions transported from Brentwood, New York.  *See id*. ¶ 13.  Attached to Sunny Farms' Complaint is a copy of the agreement itself.  November 2012 Agreement, Valerian Decl., Ex. A.

Consistent with the language of the Complaint, the agreement was executed by representatives of Sunny Farms and Rail Solutions in November 2012.  *See id*.  Under the agreement, Sunny Farms' landfill in Ohio is the "disposal facility," the origin of waste is Brentwood, New York, and Rail Solutions is the customer company.  *See id*.  The agreement also sets forth an estimated amount of waste for disposal — "5,000 +/- tons per month" — and the rate at which the customer will compensate Sunny Farms for disposal — "$1,700 per rail car (86 tons per car)".  *See id*.  In light of the above, the Court finds that Sunny Farms has adequately alleged the terms of the contract and consideration in accordance with elements (1) and (5) set forth in *Am. Sales v. Boffo*.  *See Am. Sales, Inc.*, 71 Ohio App. 3d at 175 (determining that the framing of mutual promises as consideration satisfied the pleading requirements with respect to mutual assent and consideration).

In connection with element (2), Plaintiff's performance, Sunny Farms alleges that it fully performed under the agreement by accepting and disposing of the waste that Rail Solutions transported to its landfill in Ohio. Compl. ¶ 17. As to the third element, namely, breach, it is clear from the contract that Rail Solutions' purported failure to compensate Sunny Farms for the services it contracted to provide under the agreement would constitute a material breach of that agreement. *See* November 2012 Agreement, annexed in Exhibit A to Valerian Decl. [DE 28-5]; *see also Regency Ctr. Dev. Co. v. Constr. Dimensions, Inc*., 8th Dist. Cuyahoga No. 81171, 2003-Ohio-5067, ¶ 58. And finally, with regard to the element of damages, Sunny Farms alleges that "Rail Solutions' failure to abide by the November 2012 Agreement by not paying the sum of $920,602.84, plus attorneys' fees, costs, expenses and interest…has the effect of destroying Sunny Farms' right and ability to receive the full benefits." Compl. ¶ 55. Sunny Farms has thus adequately alleged that the material breach resulted in damages. *See also id*.    ¶ 57.

The Court acknowledges that in addition to its breach of contract claim, Sunny Farms alleges breach of implied covenant of good faith and fair dealing. In this regard, "[p]ublic policy dictates that every contract contain an implied duty for the parties to act in good faith and to deal fairly with each other." *Ireton v. JTD Realty Invests., L.L.C*., 162 Ohio Misc. 2d 1, 22, 2010-Ohio-6692, 944 N.E.2d 1238, 1255, ¶ 46 (alteration added) (quoting *Littlejohn v. Parrish*, 163 Ohio App.3d 456, 2005-Ohio-4850, 839 N.E.2d 49, ¶ 27). Breach of this duty "does not exist as a separate cause of action from a breach of contract claim." *Id*. (quoting *Walton v. Residential Fin. Corp*., 151 Ohio Misc.2d 28, 2009-Ohio-1872, 905 N.E.2d 1307, ¶ 10) (internal quotation marks omitted); accord *Harris v. Provident Life & Acc. Ins. Co*., 310 F.3d 73, 80 (2d Cir. 2002) (quoting *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992)) ("'Under New York law, parties to an express contract are bound by an implied duty of

good faith, but breach of that duty is merely a breach of the underlying contract.'").  A claim for breach of an implied covenant of good faith and fair dealing does not exist where the purported breach "pertains to matters specifically covered by the written terms of the [contract.]"  *See Gilchrist v. Saxon Mortg. Servs.*, 10th Dist. Franklin No. 12AP-556, 2013-Ohio-949, ¶ 24 (citing *Interstate Gas Supply, Inc. v. Calex Corp.*, 10th Dist. Franklin No 04AP–908, 2006–Ohio–638, ¶ 101); accord *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997) (quoting *Houbigant, Inc. v. ACB Mercantile, Inc.*, 914 F. Supp. 964, 989 (S.D.N.Y.1995), modified, 914 F. Supp. 997 (S.D.N.Y.1996)) (citing *Canstar v. J.A. Jones Constr. Co.*, 212 A.D.2d 452, 453, 622 N.Y.S.2d 730, 731 (1st Dept. 1995)) ("A claim for breach of the implied covenant 'will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.'").

Here, Sunny Farms alleges that "implicit in the November 2012 Agreement was a duty and covenant of good faith and fair dealing embracing a pledge that neither party would do anything that would have the effect of destroying or injuring the right of the other party to receive the benefits of the November 2012 Agreement."  Compl. ¶ 53.  Sunny Farms further alleges that the written terms of the November 2012 Agreement do not limit this duty in any way.  *Id.* ¶ 54.

The Court finds that to the extent Sunny Farms' claim for breach of the implied covenant of good faith and fair dealing does not arise from a purported breach of the written terms of the November 2012 Agreement, Sunny Farms has adequately pleaded such a breach.

### c.    Account Stated

Sunny Farms also sets forth a claim against Rail Solutions for an account stated.  *See* Compl. ¶¶ 59-66.  "[A]n action on an account is appropriate where the parties have conducted a

series of transactions, for which a balance remains to be paid." *AMF, Inc. v. Mravec*, 2 Ohio

App. 3d 29, 31, 440 N.E.2d 600, 603 (8th Dist. 1981) (citing *Dykeman v. Johnson*, 83 Ohio St.

126, 93 N.E. 626 (Ohio 1910)).  The account must set forth the following:

> An account must show the name of the party charged. It begins with
> a balance, preferably at zero, or with a sum recited that can qualify
> as an account stated, but at least the balance should be a provable
> sum. Following the balance, the item or items, dated and identifiable
> by number or otherwise, representing charges, or debits, and credits,
> should appear. Summarization is necessary showing a running or
> developing balance or an arrangement which permits the calculation
> of the balance claimed to be due.

*Id.* at 31, 440 N.E.2d at 603 (quoting *Am. Sec. Serv. v. Baumann*, 32 Ohio App.2d 237, 239, 61

O.O.2d 256, 289 N.E.2d 373 (10th Dist. 1972)) (internal quotation marks omitted).  Moreover,

pursuant to Ohio Civ. P. 10(D), the account must be attached to the plaintiff's complaint.  *Gen.*

*Truck & Auto Repair v. Wilson*, 8th Dist. Cuyahoga No. 36686, 1978 WL 217688, at *2 (Feb.

23, 1978) (quoting Ohio Rules of Civ. P. 10(D)); *see Equable Ascent Fin., L.L.C. v. Christian*,

196 Ohio App.3d 34, 2011-Ohio-3791, 962 N.E.2d 322, 326, ¶ 14 (quoting *Asset Acquisitions*

*Group, L.L.C. v. Gettis*, 186 Ohio App.3d 586, 2010-Ohio-950, 929 N.E.2d 506, ¶ 14) ("'The

purpose of the requirement to attach an account imposed by Civ.R. 10(D) is to exemplify the

basis of the particular claim for relief alleged, in order to confine the issues in the action to

matters related to the course of dealings between the parties the attachment portrays.'").

Here, Sunny Farms did not attach an account to the Complaint.  This fact is not

necessarily fatal to its cause of action, however, since strict compliance with Civ. P. 10(D) is not

required.  *Hudson & Keyse, LLC v. Carson*, 10th Dist. Franklin No. 07AP-936, 2008-Ohio-2570,

¶ 15 (alteration added) ("[C]ompliance with Civ.R. 10(D)(1) can be achieved by attaching

documents that do not strictly constitute a statement of account."); *see Equable Ascent Fin.,*

*L.L.C.*, 2011-Ohio-3791, ¶ 17.  For example, in determining that the plaintiff satisfied Civ. R.

10(D)(1), the court in *Capital One Bank v. Nolan* explained that "it is not necessary to attach a complete copy of the account; instead, for pleading purposes, the statement must show the name of the party charged, a beginning balance representing 'a provable sum,' any debits or credits adjusting the balance for that statement, and a summary of the balance due on the account. Importantly, at the pleading stage, the beginning balance must be a 'provable' sum, not a proven sum." *Capital One Bank v. Nolan*, 4th Dist. Washington No. 06CA77, 2008-Ohio-1850, ¶ 10 (internal citation omitted).

Sunny Farms did attach a copy of the written contract to the Complaint, and included invoices in support of the amount owed as an exhibit to its Motion for Default Judgment, which was served on Rail Solutions. *See* Invoices, annexed as Exhibit B to Plaintiff's Motion for Default Judgment [DE 28-6]. The Court finds that this constitutes adequate notice to Rail Solutions of the account upon which the complaint is based. *See Hudson & Keyse, LLC*, 2008-Ohio-2570, ¶ 15 (in determining that the appellee failed to comply with Civ.R. 10(D), the court concluded that the affidavit submitted in connection with the Complaint failed to place the appellant *on notice* of the account upon which the complaint was based) (emphasis added).

"'To state a claim for an account stated, a plaintiff must plead that: (1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor promised to pay the amount stated.'" *A. & R. Lobosco, Inc. v. Superior Trading, Inc.*, No. 15-3737, 2016 WL 5723982, at *5 (E.D.N.Y. Sept. 14, 2016) (alteration in original) (quoting *Silverman & Silverman, LLP, v. Pacifica Found.*, No. 11-1894, 2015 WL 7118246, at *3 (E.D.N.Y. 2015) (internal quotation marks and citations omitted)), *report and recommendation adopted*, No. 15-3737, 2016 WL 5719720 (E.D.N.Y. Oct. 3, 2016). Elements (2) and (3) above are implied when the defendant receives the invoices and does not object within a reasonable period of time. *See id.* (quoting

26

*Ritz v. Mike Rory Corp.*, No. 12-367, 2014 WL 7010661, at *2 (E.D.N.Y. July 30, 2014)

(citations omitted)), report and recommendation adopted by, 2014 WL 7010661 (E.D.N.Y. Aug.

28, 2014)) (citing *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d

Cir. 1999) (alteration added) ("[I]f 'a party receiving a statement of account keeps it without

objecting to it within a reasonable time' or 'if the debtor makes partial payment," then

acceptance of the account stated and promise to pay are implied.)); *see also Phoenix Int'l, Inc v.*

*Eyrich*, 9th Dist. Summit No. 10310, 1982 WL 2873, at *3 (Jan. 13, 1982) (citing 1 Ohio

Jurisprudence 3d 189, Accounts and Accounting, Section 27) ("The duty is on the one to whom

the account is rendered to examine same within a reasonable time and object if he disputes its

correctness."). Here, Sunny Farms alleged in its Complaint that "Rail Solutions has not

communicated any objection or response to Sunny Farms as to the validity of the Invoices or the

amount reflected therein" and such silence "in the face of this stated account, long after a

reasonable time of its receipt of the Invoices and even up to the present day, constitutes assent

and agreement to the account stated."  Compl. ¶ 63.  Moreover, Sunny Farms alleges that in

executing the Assignment on behalf of Rail Solutions, T.M. Vozzella agreed to the amount

owed.  *Id*. ¶ 65; *see* Assignment, annexed as Exhibit B to Complaint [DE 1-2], Recitals, D

("Accordingly, Assignee has a valid, enforceable account receivable, debt and claim with and

against Assignor, the current and outstanding amount of which is $920,602.84 plus attorney's

fees, costs, expenses and interest at the highest rate allowed by law [ ].").  In light of this

information, the Court finds that Sunny Farms has stated a *prima face* case for an account stated.

> **d.     Unjust Enrichment, Promissory Estoppel, and Quasi-Contract/Quantum Meruit with respect to November 2012 Agreement**

Sunny Farms includes causes of action for unjust enrichment, promissory estoppel, and quasi-contract/quantum meruit, in the alternative, and in the event that Sunny Farms has not established a claim for breach of the November 2012 Agreement. *See generally* Compl. The Court has already determined that Plaintiff properly pleaded a claim for breach of contract. The Court therefore finds it unnecessary to consider the alternative claims since they are duplicative of Plaintiff's breach of contract claim. *See generally Cont'l Cas. Co. v. Contest Promotions NY, LLC*, No. 15-CV-501, 2016 WL 1255726, at *4 (E.D.N.Y. Mar. 28, 2016); *see also LG Capital Funding, LLC v. Ubiquity, Inc.*, No. 16-3102, 2017 WL 3173016, at *3 (E.D.N.Y. May 12, 2017) (collecting cases), report and recommendation adopted, No. 16-3102, 2017 WL 3168961 (E.D.N.Y. July 25, 2017); *see also McCarty v. Pedraza*, 2014-Ohio-3262, ¶ 28, 17 N.E.3d 71, 81 (2nd Dist.).

> **e.     Promissory Estoppel and Fraud with respect to the Assignment**

Sunny Farms sets forth a claim for breach of contract or breach of implied covenant of good faith and fair dealing with respect to the Assignment against T.M. Vozzella only. Compl. at 22. In the alternative, and if it is determined that the parties did not have a contract with respect to the Assignment, then Sunny Farms "seeks recovery of the amounts it expended based on Rail Solutions' and T.M. Vozzella's representations under the alternative theor[ies]" of promissory estoppel and fraud. Compl. ¶¶ 108, 115. In connection with both claims, Sunny Farms sets forth the following:

> Sunny Farms has expended and will continue to expend considerable sums in legal fees and costs based upon its reliance on the promises and representations of T.M. Vozzella and Rail

28

> Solutions. It has received and will receive nothing in return for those expenditures, because T.M. Vozzella's and Rail Solutions' newer statements has made prosecution of the assigned claim against Island Rail and Maggio no longer feasible as a practical matter. Accordingly, it has been injured by its reliance upon T.M. Vozzella's and Rail Solutions' promises in the amount of those expenditures to be determined at trial.

Compl., ¶¶ 112, 121.  Through its Motion for Default Judgment, Rail Solutions seeks only recovery of "[t]he amount due and payable from Rail Solutions to Sunny Farms under the parties' November 2012 Agreement."  *See* Valerian Decl. ¶¶ 5, 11; *see* Pl's. Mem. at 10-14; Pl's. Mem. at 15 ("In this case, Sunny Farms has clearly established its right to an award of damages in the amount of the unpaid invoices rendered to Rail Solutions.").  In light of the foregoing information and the fact that the Court has already determined that Plaintiff has established a claim for breach of the November 2012 Agreement, the Court finds it unnecessary to engage in a review of the alternative theories of promissory estoppel and fraud with respect to the Assignment.

### 3. Prejudice

The last factor for the Court to consider is whether the plaintiff would be prejudiced if the motion for default judgment were to be denied.  Denying this motion would actually be prejudicial to Sunny Farms since "there are no additional steps available to secure relief in this Court."  *Bridge Oil Ltd.*, 2008 WL 5560868, at *2 (citing *Mason Tenders*, 2003 WL 1960584, at *3).  If a default judgment is not granted, the Plaintiff will have no alternative legal redress to recover the losses it has sustained.  Since all three factors necessary to establish a default have been satisfied, the Court respectfully recommends to Judge Spatt that default judgment be entered against Sunny Farms.

## C.    Damages and Requested Relief

Although a party's default is viewed as "a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974); Fed. R. Civ. P. 8(d)). Therefore, once a party's default as to liability is established, a plaintiff still must prove damages. *See Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. and Training Fund and Other Funds v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing Fed. R. Civ. P. 55(b)(2); *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *see also Gutman v. Klein*, No. 03-1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) (quoting *Flaks*, 504 F.2d at 707) ("'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'"). The only question remaining, then, is whether Sunny Farms has provided adequate support for the damages sought. *See Gutman*, 2010 WL 4975593, at *1 (citing *Bravado Int'l Group Merch. Servs.*, 655 F. Supp. 2d at 189; *Greyhound*, 973 F.2d at 158) ("burden is on the plaintiff to establish entitlement to damages") (internal quotation marks omitted), report and recommendation adopted 2010 WL 4916722 (E.D.N.Y. Nov. 24, 2010), *aff'd*, 515 Fed. Appx. 8 (2d Cir. 2013).

Sunny Farms seeks to recover $920,602.84 in losses, representing the amount of waste it accepted from Rail Solutions for which no payment was made.  Valerian Decl. ¶ 5; *see* Pl.'s Mem., at 15-16.  In support of its request, Sunny Farms has provided copies of 20 unpaid invoices which it issued to Rail Solutions at 117 Tri County Plaza, Villa Rica, GA 30180.  *See* Invoices, annexed as Ex. B to Pl.s' Mot. [DE 28-6].  The invoices cover the period running from

May 11, 2013 to September 21, 2013 and set forth separate entries for each charge. *Id.* Each charge is accompanied by a "description" designating the particular "contract" from which that charge arose. *Id.* Many of the contract descriptions list "Rail Solutions, LLC-NY." *Id.* However, in its subsequent June 20, 2017 Order, the Court noted that a number of these entries designate "CWPM" as the contract. *See e.g.*, Invoice #064-0000024075 [DE 28-6]. In its June 20, 2017 Order, the Court requested an explanation of the relationship between CWPM and Rail Solutions. DE 31. In his Declaration, James Lyon explained that "contract" is a term utilized by Sunny Farms' billing system to denote a "job" and it does not necessarily mean that Sunny Farms had a contract with the listed entity. Lyon Decl. ¶ 5. In connection with this explanation, Lyon stated that Rail Solutions acted as Sunny Farms' broker, locating third-parties and contracting with them for the disposal of their waste at Sunny Farm's landfill. *Id.* ¶ 4. CWPM was one of those third parties, and, as such, was a customer of Rail Solutions. *Id.* Rail Solutions contracted with CWPM to transport CWPM's construction and demolition debris to Sunny Farm's landfill. *Id.* ¶ 4. Lyon further explained that the charges associated with CWPM were higher than the fees charged in connection with other jobs because, unlike those other jobs, Sunny Farms paid the railroad for the rail freight and then included that rail freight fee in its charge to Rail Solutions. *Id.* ¶ 6. According to Lyon, there is no written agreement that he can find accounting for this arrangement. *Id.* However, "over the life of the relationship, Sunny Farms charged Rail Solutions for 299 CWPM cars and Rail Solutions paid in full for about 93 of these charged, including the embedded rail freight charges (206 or so are still outstanding as part of this claim), so it is clear that Rail Solutions accepted and agreed to this charge and it established a course of dealings between the parties with respect to this amount." *Id.*

The Court further noted that, consistent with the November 2012 Agreement, the invoices set forth a $1,700 fee per rail car. DE 31. However, the invoices also include recurring charges of $450.00 and $1,400 — amounts not accounted for in the agreement. *Id.* According to Lyon, some customers choose to lease Sunny Farms' rail cars to transport waste from transfer stations and a $450 usage fee is charged for doing so. Lyon Decl. ¶¶ 12, 14. Although there is no written agreement accounting for the usage fee that Lyon can find, he proffers that "Sunny Farms charged Rail Solutions for 315 rail car usages and Rail Solutions paid for all but the 10 or so that are still outstanding as part of this claim. Thus it is clear that Rail Solutions accepted and agreed to this charge and it established a course of dealings between the parties with respect to this amount." *Id.* Moreover, the recurring $1,400 fee was assessed for the use of "smaller capacity railcars that start with the marking IFRX," consistent with the description indicated on the invoices. *See id.* ¶ 15. As provided on the invoices, the IFRX railcars have a capacity of 65 tons, as opposed to non-IFRX cars that have a capacity of 85 tons. *Id.*

In Christopher Valerian's Declaration submitted in support of Sunny Farms' Motion for Default Judgment, he represented that in December 2009, WCA Waste Corporation acquired Sunny Farms, and in December 2014, "WCA sold the equity interests and assets of Sunny Farms to an unrelated third party, but retained the claims that are the subject matter of this action." Valerian Decl. ¶ 2. In response, the Court requested documentation showing that Sunny Farms retained the right to the claims giving rise to the instant action. DE 31. In its supplemental submission, Sunny Farms provided the Court with a copy of the WCA-Tunnel Hill Acquisition Agreement and directed the Court to Schedule 2a which states that:

> [a]ll right, title and interest of Sunny Farms Landfill, LLC in, resulting from, arising out of or in connection with that certain pending case in the United States District Court for the Eastern District of New York styled Sunny Farms Landfill, LLC, as assignee

> of Rail Solutions, LLC v. Island Rail Terminal, Inc. and Vincent
> Maggio Sr. filed on or about July 9, 2014 and the facts and
> circumstances giving rise to such proceeding.

Acquisition Agreement, annexed as Exhibit 2 to Lyon Decl. [DE 34-13]. The Court is satisfied that the instant action arose from the suit referenced in the aforementioned provisions, namely, *Sunny Farms Landfill, LLC, as assignee of Rail Solutions, LLC v. Island Rail Terminal*. Sunny Farms alleges that T.M. Vozzella "reneged" on the assignment that gave rise to its suit against Island Rail, forcing Sunny Farms to dismiss that action and commence the instant action against Rail Solutions. *See* Valerian Decl. ¶ 10.

Having reviewed Sunny Farms' Motion for Default Judgment along with its supplemental submission, the Court is unable to recommend that judgment be entered against Rail Solutions for the entirety of the amount sought, $920, 602.84. As discussed above, in his Declaration, Lyon stated that there is no written agreement evidencing the $450 railcar usage fee or the increased fee charged in connection with the CWPM contract. *Id.* ¶¶ 6, 14. Although Lyon explains that Rail Solutions' history of paying these fees has established a "course of dealings," Sunny Farms has not provided adequate evidence in support of such payment history. *See id.* ¶¶ 6, 14. Moreover, Sunny Farms has not established a "course of dealings" with respect to the "fuel charges" appearing on the Invoices. The Court acknowledges that the Invoices show some five sporadic instances where it appears Rail Solutions paid either a rail usage fee or fuel fee. However, this does not establish a "course of dealing."

In light of the foregoing factors, the Court recommends to Judge Spatt that default judgment be entered against Rail Solutions in the amount of $920, 602.84, less any fees not explicitly set forth in the November 2012 Agreement — apart from the $1,400 fee assessed for use of the small rail cars with the marking IFRX. *See* Lyon Decl. ¶ 15. The Court has excluded

the rail usage and fuel charge fees from the total recovery for the reasons noted.  The Court also

has reduced the fee for each rail car associated with the CWPM contract to $1,700.  The Court

sets forth its calculations in the following chart:

| Invoice Number | Number of Rail Car Entries per Fee | | Total Recovery |
|---|---|---|---|
| | $1700 | $1400 | |
| 064-0000024075 | 33 | 0 | $56,100 |
| 064-0000024091 | 22 | 0 | $37,400 |
| 064-0000024178 | 26 | 14 | $63,800 |
| 064-0000024233 | 15 | 0 | $25,500 |
| 064-0000024236 | 0 | 0 | 0 |
| 064-0000024237 | 1 | 0 | 0 ($1,700 reduced by $1,700 payment) |
| 064-0000024260 | 13 | 0 | $21,842.96 ($22,100 reduced by $257.04 "account adjustment") |
| 064-0000024345 | 32 | 0 | $54,400 |
| 064-0000024396 | 2 | 0 | $3,400 |
| 064-0000024504 | 7 | 0 | $11,900 |
| 064-0000024558 | 16 | 0 | $27,200 |
| 064-0000024608 | 7 | 0 | $11,900 |
| 064-0000024666 | 15 | 0 | $25,500 |
| 064-0000024737 | 7 | 0 | $11,900 |
| 064-0000024788 | 9 | 0 | $15,300 |
| 064-0000024838 | 3 | 0 | $5,100 |
| 064-0000024896 | 1 | 0 | $1,700 |
| 064-0000024957 | 7 | 0 | $11,900 |
| 064-0000025010 | 6 | 0 | $10,200 |
| 064-0000025059 | 1 | 0 | $1,700 |
| **TOTAL** | | | **$396,742.96** |

Further, since Rail Solution's former co-defendant TM Vozzella has already consented to

entry of judgment against him in the amount sought by Plaintiff against Rail Solutions, the Court

recommends that Rail Solutions and T.M. Vozzella be held jointly and severally liable for the

amount awarded.

This Court further recommends to Judge Spatt that Sunny Farms be given an opportunity, if it chooses to do so, to provide further support for the fees not explicitly set forth in the November 2012 Agreement if it can establish a "course of dealing."

**V.    CONCLUSION**

For the reasons that follow, the Court respectfully recommends to Judge Spatt that Sunny Farm's default judgment motion be GRANTED in part. To that end, the Court recommends that default judgment be entered against Sunny Farms and that damages in the amount of $396,742.96 be awarded.

**VI.    OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Arthur D. Spatt, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *see also Johnson v. Woods*, 426 F. App'x 10, 11 (2d Cir. 2011) (citing *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003)); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996) (citing *McCarthy v. Manson*, 714 F.2d 234, 237 n.2 (2d Cir. 1983)).

**Counsel for the Plaintiff is directed to serve a copy of this Report and Recommendation on Rail Solutions and T.M. Vozzella forthwith by overnight mail and first-class mail and to file proof of such service on ECF**.

SO ORDERED.

Dated:  Central Islip, New York
        August 24, 2017


_/s/ A. Kathleen Tomlinson_
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge